**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

```
The J.M. Smucker Company,      )
et al.,                        )
                               )
            Plaintiffs,        )  Case No. 1:09-CV-541
                               )
      vs.                      )
                               )
San Marco Roasters, Inc.,      )
et al.,                        )
                               )
                               )
            Defendants.        )
```

O R D E R

        This matter is before the Court on Defendants' motion
to dismiss (Doc. No. 17).  For the reasons set forth below,
Defendants' motion to dismiss is well-taken and is **GRANTED.**  The
complaint is **DISMISSED WITHOUT PREJUDICE.**

I. Background

        On July 31, 2009, Plaintiffs The J.M. Smucker Company,
The Folgers Coffee Company, Kraft Foods Global, Inc., Melitta
USA, Inc., and European Coffee Classics, Inc. filed this action
for a declaratory judgment that none of them have infringed U.S.
Patent No. 6,681,086 ("the '086 Patent").  The '086 Patent claims
a "method for processing roasted coffee to improve the retention
of carbon dioxide and aromatics liberated from the roasted
coffee."  Complaint Ex. A, Abstract of Patent.  The Court
observes that there is some dispute concerning who owns the '086
Patent because it has been the subject of one or more

assignments.  However, named in the complaint as Defendants are
San Marco Roasters, Inc. ("San Marco"), a Canadian corporation
with its principal place of business in Ontario, Canada, Balsam
Coffee Solutions, Inc. ("Balsam"), a Canadian corporation with
its principal place of business in Ontario, Canada, Robert
Buckingham, a Canadian citizen who resides in Ontario, Canada,
and William Anker, a Canadian citizen who resides in Ontario,
Canada.  Complaint ¶¶ 6-11.  The complaint alleges that all of
these Defendants are alter egos of each other.  Id. ¶ 12.

        The Plaintiffs in this case are The J.M. Smucker
Company ("Smucker"), an Ohio corporation with its principal place
of business in Orrville, Ohio, The Folgers Coffee Company, a
subsidiary of Smucker and an Ohio corporation with its principal
place of business in Cincinnati, Ohio, Kraft Global Foods, Inc.,
a Delaware corporation with its principal place of business in
Northfield, Illinois, Melitta USA, Inc. ("Melitta"), a Florida
corporation with its principal place of business in Clearwater,
Florida, and European Coffee Classics, Inc. ("European"), a New
Jersey corporation with its principal place of business in Cherry
Hill, New Jersey.

        The '086 Patent was issued to Buckingham and Anker on
November 1, 2005.  The complaint alleges that beginning in about
March 2006 and continuing through October 2007, Buckingham, on
behalf of San Marco, repeatedly offered to sell the '086 Patent

2

to Folgers and its former parent company, The Proctor & Gamble
Company ("P&G"), for the sum of $750,000.  Complaint ¶ 13, 15.
Additionally, in 2008, Buckingham and/or San Marco approached P&G
and Folgers about purchasing the '086 Patent through a broker.
Id. ¶ 16.

On March 13, 2006, as part of submitting the '086
Patent to P&G for sale, Buckingham completed and endorsed what
the complaint calls a "binding agreement," which was drafted by
P&G, and sets forth the terms and conditions under which P&G
would consider buying the patent.  Complaint ¶ 14.  The Court
notes, however, that email correspondence from P&G to Buckingham
refers to this document as a "release form."  Doc. No. 17-1, at
7, 9.  This release form is addressed to P&G's External Business
Development Department and states:

> I am submitting to you certain technologies, and/or
> other materials having to do with the manufacture,
> sale, and/or packaging of your present products, and/or
> development of new products, process, and/or packaging,
> (herein after [sic] referred to as "submissions").
>
> In doing so, I agree to the conditions printed below
> and further agree that these condition apply broadly to
> The Proctor & Gamble Company hereinafter referred to
> along with all of its subsidiary and affiliates as
> "P&G".
>
> 1. All submissions are voluntary on my part.  No
>    confidential or contractual relationship is to be
>    established by the submissions or to be implied from
>    consideration of the submissions.
>
> 2. For submissions covered by a patent, I agree to **RELY
>    WHOLLY ON MY PATENT RIGHTS, AS DEFINED BY THE CLAIMS**

3

**OF AN ISSUED PATENT.**  The submissions are covered by the following patent(s):_____

3. For submissions covered by pending applications for patents or provisional applications, I agree to rely for my protection wholly on such rights as I may have under the patent laws of the countries in which I have filed.

4. For submissions that have not been covered by a patent, pending patent application or provisional patent applications, I agree that they will be considered with the understanding that the **use of such submissions and the compensation, if any, to be paid for them are matters resting solely within the discretion of The Proctor & Gamble Company.**

5. **As the submitter, I warrant, to the best of my knowledge, I am the owner of the submissions or that I am legally free to make this disclosure and to convey rights to the submissions being offered for disclosure.**

6. The foregoing conditions may not be modified or waived.  There are no other understandings or agreements between P&G and me on this subject.

*I understand the policy statements set forth above and accept the conditions without reservation.  I am disclosing the submissions voluntarily on a **NON-CONFIDENTIAL BASIS** and agree that there is to be **NO CONFIDENTIAL RELATIONSHIP** whatever established in connection with my submissions or P&G's evaluation of the submission.*

Doc. No. 17-1, at 8 (emphasis in original).

P&G did not buy the '086 Patent.  On February 27, 2009, Balsam sued each of the Plaintiffs for infringing the '086 Patent in the United States District Court for the Eastern District of Texas.  Complaint ¶ 27.  Plaintiffs currently having pending a motion to dismiss the Texas infringement action for lack of

subject matter jurisdiction on the grounds that Balsam has no right, title, or interest in the '086 Patent.  Id. ¶¶ 28-29. However, because of Balsam's filing of the Texas infringement action, Plaintiffs "have a reasonable apprehension of being sued for infringement of the '086 Patent" by the Defendants in this case.  Id. ¶ 33.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(2) for lack of jurisdiction over the person. Defendants' motion has been briefed and is ready for disposition.

## II.  Analysis

Because this lawsuit concerns patent infringement, the law of the Federal Circuit Court of Appeals controls the resolution of the jurisdictional question.  Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).  Where the parties have not conducted discovery, as in this case, the plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction in the forum district, and all of the pleadings and affidavits are construed in the plaintiff's favor.  Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1017 (Fed. Cir. 2009).

The jurisdictional analysis is a two-step process. First, the Court must determine whether the defendant could be subjected to the jurisdiction of a state court in this district. Red Wing Shoe, 148 F.3d at 1358.  Second, if the first step is

satisfied, the Court must determine whether maintenance of the
suit comports with the Due Process Clause in that it would not
"offend traditional notions of fair play and substantial
justice." Id. (quoting International Shoe Co. v. Washington, 326
U.S. 310, 316 (1945)).  The first part of the analysis usually
involves determining whether the defendant is subject to
jurisdiction under the forum state's long arm statute.  If so,
the second part of the analysis requires the district court to
determine whether the defendant's contacts with the forum state
are sufficient so that it reasonably could have anticipated being
haled into court in that forum.  Where the state's long arm
statute reaches the limits of the Due Process Clause, the two
steps merge and the inquiry becomes whether the exercise of
personal jurisdiction satisfies due process.  Id.

        Ohio's long arm statute does not reach the limits of
the Due Process Clause.  Hildebrand v. Steck Mfg. Co., Inc., 279
F.3d 1351, 1354 (Fed. Cir. 2002).  Therefore, the Court must
first determine whether it has personal jurisdiction over
Defendants pursuant to the long arm statute and, if so, whether
due process is satisfied.  Commissariat A L'Energie Atomique v.
Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir.
2005).  Ohio's long arm statute provides:

            (A) A court may exercise personal jurisdiction over a
            person who acts directly or by an agent, as to a
            cause of action arising from the person's:

6

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev. Code § 2307.382(A). Moreover, § 2307.382 provides that where jurisdiction is asserted against a person pursuant to this

section, "only a cause of action arising from acts enumerated in this section may be asserted against him."  Ohio Rev. Code § 2307.382(C).  In order for the assertion of personal jurisdiction to be appropriate pursuant to § 2307.382, subsection (C) requires a 'proximate cause' relationship between a plaintiff's personal injury claim and the defendant's conduct in Ohio." Brunner v. Hampson, 441 F.3d 457, 466 (6th Cir. 2006).

In this case, Plaintiffs do not contend that Defendants are subject to the general personal jurisdiction of this Court because of continuous and systematic contacts with Ohio.  Silent Drive, Inc. v. Strong Ind., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003).  Rather, Plaintiffs contend that the Court has specific personal jurisdiction over Defendants pursuant to the "transacting any business in this state" clause of § 2307.382(A)(1).  Plaintiffs base this argument on Buckingham's repeated attempts to sell the '086 Patent to P&G in Ohio as well as the "binding agreement" Buckingham signed as part of submitting the patent to P&G.  Defendants, however, argue that under the Federal Circuit's interpretation of Ohio law, their unsuccessful efforts to sell the patent to P&G do not constitute "transacting any business" in Ohio.  Defendants argue that the "binding agreement" reflects nothing more than an offer to negotiate and did not create any binding obligations in Ohio.  Finally, Defendants argue that even if the efforts to sell the

8

patent to P&G were sufficient to satisfy the "transacting any business" clause, Plaintiffs have failed to satisfy subsection (C)'s "arising from" requirement.  Defendants argue that the "arising from" requirement is not satisfied because Plaintiffs' declaratory judgment action arises from their fear of being sued for patent infringement, which arose from Defendants' filing of the Texas infringement action, and not their offer to sell the patent to P&G.  The Court agrees with Defendants on both points.

"The mere solicitation of business by a foreign person does not constitute transacting business in the state." Hildebrand, 279 F.3d at 1354 (citing U.S. Sprint Comm. Co. v. Mr. K's Foods, Inc., 624 N.E.2d 1048, 1052 (Ohio 1994)).  Rather, "[t]o be doing business, negotiations must ultimately lead to a 'substantial connection' with the forum, creating an affirmative obligation there." Id.  Thus, in Hildebrand, the Court held that Hildebrand's offers to do business with potential infringers, and warning letters coupled with offers to negotiate, only constituted soliciting business. Id. at 1355.  Hildebrand, however, did not transact business in Ohio because his "proffers and negotiations with Ohio entities did not result in one binding licensing agreement or any other obligation." Id.  Thus, the district court lacked personal jurisdiction over Hildebrand under the "transacting any business" clause. Id. at 1354.

In this case, Buckingham's alleged repeated efforts to sell the '086 Patent to P&G were unsuccessful, and thus can only be characterized as soliciting business, but not transacting business. Moreover, the negotiations did not result in any substantial connection with Ohio, which in turned created an affirmative obligation on the part of Buckingham, or the other Defendants, in Ohio. In this regard, the Court agrees with Defendants that Plaintiffs overstate the significance of the "binding agreement" signed by Buckingham as part of submitting the patent to P&G for consideration.

It is clear, except as an acknowledgment that Buckingham would rely on patent law to protect his intellectual property rights, that the "binding agreement" did not create any binding obligations. The form itself expressly disclaims that any contractual relationship between the parties was created as part of the submission process. See supra, at 3-4. This form, as Defendants persuasively argue, is more accurately described as constituting a part of the negotiation process because P&G made it clear that it would not consider buying the patent until Buckingham executed the release. See Doc. No. 17-1, at 7. In other words, executing the release was a condition precedent to P&G considering whether to buy the patent.

Moreover, the "binding agreement" is insufficient to create a "substantial connection" with Ohio for purposes of the

10

"transacting any business" clause.  As indicated, the
"substantial connection" must result in an affirmative obligation
in the forum.  Review of the cases indicates that the
"substantial connection" contemplates an affirmative obligation
that is active and ongoing, and not passive.  The principal case
on point is Kentucky Oaks Mall Co. v. Mitchell's Formal Wear,
Inc., 559 N.E.2d 477 (Ohio 1990), in which the defendant
transacted business in Ohio because the negotiations led to a
lease agreement obligating the defendant to make lease payments
in Ohio.  Id. at 76.  Conversely, the defendant's negotiations in
Hildebrand did not lead to a substantial connection with Ohio
because no licensing agreement between the parties was reached,
an agreement that obviously would have created an ongoing
relationship between Hildebrand and the alleged infringers.  In
Douglas v. Modern Aero, Inc., 954 F. Supp. 1206, 1213 (N.D. Ohio
1997), a single, isolated purchase of an airplane did not create
any ongoing obligations within Ohio for purposes of the
"transacting any business clause."  A number of other cases
highlight the necessity of creating an ongoing relationship in
the forum as a predicate to finding that the defendant transacted
business in Ohio.  See Burnshire Development, LLC v. Cliffs
Reduced Iron Corp., 198 Fed. Appx. 425, 432 (6th Cir. 2006)
(noting that a substantial connection requires ongoing,
substantive contacts in the forum state); The Andersons, Inc. v.

11

<u>Demrex Indus. Serv. Group, LLC</u>, 590 F. Supp.2d 963, 967 (N.D. Ohio 2008)(finding defendant transacted business in Ohio because defendant executed contract with ongoing responsibilities in Ohio); <u>Walker v. Concoby</u>, 79 F. Supp.2d 827, 831 (N.D. Ohio 1999)("[T]he fact that the distribution and authorship agreements created ongoing duties and obligations between the non-resident and resident defendants weighs in favor of personal jurisdiction[.]"); <u>Weldon F. Stump & Co., Inc. v. Delta Metalforming Co.</u>, 793 F. Supp. 157, 160 (N.D. Ohio 1992)("[W]here a non-resident defendant has entered into a contract which can be characterized as a one-shot deal or which does not anticipate creating an impact on the commerce of the forum state, it would not be fair to force that defendant to litigate there."); <u>Shaker Const. Group, LLC v. Schilling</u>, No. 1:08cv278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)(Dlott, J.)(stating that in order to create a "substantial connection" there "must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state."). In this case, the "binding agreement" did not create any ongoing obligations in Ohio for Buckingham. The agreement in fact does not require Buckingham to perform any affirmative act in Ohio. For instance, there are no payments to be submitted or reports to be made in Ohio. Moreover, the fact that the document specifically disclaims any contractual

relationship between P&G and Buckingham highly suggests that no
ongoing obligations between the parties were created.  The
"binding agreement" is essentially, in the words of the Weldon
court, a "one-shot deal."  Accordingly, the Court concludes that
the "binding agreement" did not create a substantial connection
with Ohio.  Therefore, Defendants did not transact business in
Ohio for purposes of the long arm statute.

     In any event, if Defendants did conduct business in
Ohio by offering to sell the patent to P&G, Plaintiffs' causes of
action do not arise out of those contacts for purposes of
subsection (C).  As indicated above, in order to satisfy this
requirement, the defendant's actions in the state must be the
proximate cause of the plaintiff's cause of action.  It is clear
that the causes of action of Kraft, Melitta, and European did not
arise out of Defendants' alleged transacting of business in Ohio.
None of these parties are based in Ohio and, in fact, there are
no allegations that Defendants tried to sell the '086 Patent to
any of them.  Moreover, neither Folgers' nor Smucker's
declaratory judgment causes of action arise out of Defendants'
alleged transacting of business in Ohio.  The transaction at
issue is Defendants' attempts to sell the patent-in-suit to P&G.
The declaratory judgment action, however, does not arise from
those contacts.  Rather, the complaint makes clear that it is
Defendants' filing of the patent infringement suit in Texas that

gives rise to the declaratory judgment claims.  Complaint ¶ 33. Consequently, the complaint fails to satisfy § 2307.382(C).

For all of those reasons, the complaint fails to establish a prima facie case that the Defendants are subject to personal jurisdiction in Ohio under the long arm statute, even assuming they are alter egos of each other.  The Court notes that it has discretion to allow discovery on the jurisdictional issue. Plaintiffs, however, have not requested leave to conduct discovery on personal jurisdiction and, moreover, the jurisdictional allegations are particularly weak.  It is unlikely that allowing discovery on personal jurisdiction would be a fruitful exercise.  Consequently, the Court will not allow discovery to be conducted on personal jurisdiction.  See Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981) (affirming district court's order denying leave to conduct jurisdictional discovery where "there [was] no reasonable basis to expect that further discovery would reveal contacts sufficient to support personal jurisdiction."); Autogenomics, 566 F.3d at 1022-23 (denial of jurisdictional discovery controlled by law of the regional circuit).  Accordingly, Defendants' motion to dismiss is well-taken and is **GRANTED.**  The complaint is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**

14

Date  January 21, 2010                    s/Sandra S. Beckwith
                                          Sandra S. Beckwith
                                 Senior United States District Judge